IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


CARLOS TOVAR MENDOZA,

       Petitioner,

v.                                                                                                    CIV 05-1303 BB/CEG

ANTHONY ROMERO, Director,
Regional Correctional Center, et al.,

       Respondents.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Carlos Tovar Mendoza's: (i) *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, (ii) "exhibit list," (iii) "statement," (iv) memorandum and affidavit detailing his claims, (v) fifth motion for appointment of counsel, (vi) motion for copies, (vii) motion for leave to invoke provisions of the Federal Rules of Civil Procedure ("FRCP"), and (vii) motion for appointment of an interpreter.[1]  *See Docs. 1, 19, 23, 25-30.*  In addition, Respondents have filed their Answer, a motion to dismiss, and the Record Proper from the state proceedings.  *See Docs. 11, 13, and Record Proper.*[2]  All of the issues can be resolved on the record and, therefore, an evidentiary hearing is unnecessary.  *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); *Rule 8(a), Rules Governing*

---

[1] Throughout the record, Mr. Mendoza is referred to as "Tovar," and I do the same here.

[2]  All citations to "Exhibits" are those attached to Respondents' Answer, which was docketed as Document 13.  Citations to the Record Proper are to the bates-stamped numbers, unless otherwise noted. Citations to the transcripts from the state proceedings are referred to as "Plea Transcript" or "Sentencing Transcript."

*Section 2254 Cases In The United States District Courts.*  For the reasons below, I recommend

that the § 2254 petition be dismissed with prejudice as without merit, the motion for appointment

of counsel be denied, the motion for copies be granted in part and denied in part, the motion for

leave to invoke provisions of the FRCP be denied, and the motion for an interpreter be denied.

## I.  Procedural Background/Procedural Default

While on supervised release for a federal crime, Tovar pleaded no contest to kidnapping,

sexually assaulting, and battering his ex-wife in state court where he was represented by Anthony

James Ayala.[3]  Judge Albert S. Murdoch sentenced him to twenty five years in prison, followed by

five years of supervised probation.  *See Ex. A.*  The plea agreement waived Tovar's right to a

direct appeal, but his attorney did file a motion to reconsider sentence under Section 39-1-1

NMSA 1978, stating that Tovar had additional mitigating circumstances to present to the Court.

*See Record Proper* at 53-54.  The motion was denied with explanation.  *Id.* at 56.  Thereafter,

Ayala was no longer involved in the case.

Tovar then filed a *pro se* state petition seeking habeas relief on a number of grounds that

he grouped under two headings: "involuntary and unknowing plea" and "ineffective assistance of

counsel."[4]  *See Ex. C.*  These are the same claims that Tovar brings in his *pro se* petition for a writ

of habeas corpus under 28 U.S.C. § 2254.  *See Doc. 1.*

Tovar contends that his plea was involuntary and unknowing because of his own

---

[3] Regarding the federal crime, Tovar was convicted of Conspiracy to Violate 21 U.S.C. §
841(b)(1)(D) and Possession With Intent to Distribute less than 50 Kilograms of Marijuana.  He was
sentenced to 46 months and three years supervised release on April 28, 2000.  *See 99 CR 690*, *Doc. 101*.

[4] Tovar filed an Eligibility Determination for Indigent Defense Services with his *pro se* state
petition.  Shortly thereafter, Public Defender Marc Gordon was appointed by Judge Murdoch.  *See Record
Proper* at 68, 117-120.

limitations with the English language and because of his attorney's promises.  Specifically, he

asserts that due to being "foreign born" and primarily a Spanish-speaker he did not understand the

consequences of a *nolo contendere* plea.  He alleges that his plea was entered "unknowingly"

because: (1) the written plea agreement was not read to him in Spanish before he signed it; (2) he

was not provided an interpreter at the plea hearing; and (3) there is no such plea in his native

country, Mexico, so "he did not understand the implications of agreeing that the prosecution had

certain proof, despite the plea colloquy."  *Doc. 1* at 5.  He asserts that his plea was "involuntary"

because Ayala bragged and misrepresented directly to Tovar and his family that he "was

personally responsible for the construction of the new MDC, he being the only attorney with

privileges to call inmates at the MDC, and how he wins all his cases."  *Id.*  As a result, Tovar

"believed and trusted" Ayala when he promised Tovar that "he would receive no more than three

years incarceration on the charges if he plead no contest, regardless of the recitations given in

court during the plea colloquy."  *Id.*

Ayala's alleged (1) misrepresentation of prowess and promise of a three-year sentence,

and (2) advice to take the plea and "go along with the plea colloquy regarding supposed

consequences without protest or correction," are among Tovar's instances of ineffective

assistance of counsel.  *Id.* at 7.  In addition, he claims that Ayala: (3) failed to investigate what

Tovar considered to be exculpatory evidence; (4) failed to present this evidence as mitigation at

sentencing; and (5) failed to make arrangements for the state court to jointly resolve the pending

motion to revoke federal supervised release due to the state arrest.  *See id.* at 6-7; *see also 99 CR*

*690*, *Docs. 129, 130, 131, 137.*

Judge Murdoch denied Tovar's state habeas petition without a hearing.  His opinion, in its

entirety, states: "The Petitioner freely and voluntarily entered this plea with full knowledge of the consequences.  The Court, as reflected in the transcript, clearly established that Mr. Tovar understood and wanted the agreement." *Ex. D* at 2.  Tovar then, with the help of appointed counsel, petitioned the New Mexico Supreme Court for certiorari.  Counsel raised a single issue: "Whether the district court must hold an evidentiary hearing when a prisoner's pro se habeas petition raises factual allegations about promises made by his attorney outside the record of the plea proceedings and he alleges that his pleas [sic] was not voluntarily or knowingly made, and he claims ineffective assistance of counsel." *Ex. E* at 1.

Respondents contend that by raising the issue of an evidentiary hearing instead of expressly presenting the two ineffective assistance of counsel claims in the petition for certiorari, that Tovar has procedurally defaulted the two claims.  *See Doc 12* at 8-12.  In a brief in opposition to the petition, Respondents submitted one footnote arguing procedural default.  *See Ex. G* at n.1.  Respondents claim that the New Mexico Supreme Court's one-sentence order denying certiorari constitutes enforcement of the procedural default.[5]

A federal habeas court cannot entertain issues that were defaulted in state court based on an "independent and adequate" procedural ground, unless the petitioner demonstrates cause and

---

[5] In its entirety, the New Mexico Supreme Court decision states:
> This matter coming on for consideration by the court upon Petition for
> Writ of Certiorari filed pursuant to Rule 12-501 of the Rules of Appellate
> Procedure, and the Court having considered said petition and response,
> and being sufficiently advised, Chief Justice Richard C. Bosson, Justice
> Pamela B. Minzner, Justice Patricio M. Serna, Justice Petra Jimenez
> Maes, and Justice Edward L. Chavez concurring; Now, Therefore, It is
> Ordered that the Petition for Writ of Certiorari is denied.

*Ex H*.

prejudice or a fundamental miscarriage of justice.  *E.g. Dretke v. Haley*, 541 U.S. 386, 388 (2004).  Under New Mexico law, issues not rased in a first state petition generally are deemed waived and will not be entertained if raised in a second petition.  That rule is deemed "adequate" for procedural default purposes.  *E.g., Jackson v. Shanks*, 143 F.3d 1313, 1318 (10th Cir.), *cert. denied*, 525 U.S. 950 (1998); *Harris v. Williams*, 5 Fed. Appx. 831, 833 (10th Cir. 2001).

However, for a procedural rule to constitute an "independent" ground for federal habeas purposes the state courts must enforce the default.   Procedural default principles simply do not apply where, as here, there is not a state decision that "clearly and expressly" relied on a procedural default.  *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991).  In denying Tovar's petition the New Mexico Supreme Court decision did not rely on a procedural bar.  The order is a form order which is ambiguous at best.  Any argument that the order relied on the footnote contained in the Respondents' brief is without merit.  I find, therefore, that this case presents no procedural default bar to habeas review and that the Petitioner "fairly presented" his federal claims in state court.[6]

## II.  Proper AEDPA Standard of Review

Because this action was commenced after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply.  *E.g., Michael Williams v. Taylor,* 529 U.S. 420, 429 (2000); *Lindh v. Murphy,* 521 U.S. 320, 326-327 (1997).  When a

---

[6]  *See, e.g., Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim").  To that extent I also note that even though the issue presented to the New Mexico Supreme Court was an evidentiary one, the petition for certiorari contains numerous references to Tovar's ineffective assistance of counsel claims.  *See e.g., Ex. E* at 1-3.

state court "adjudicates" the claim at issue on the merits, rather than disposing of a claim on a

procedural ground, a federal court cannot grant a writ of habeas corpus unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. §§ 2254(d)(1)-(2); see e.g., *Parker v. Scott*, 394 F.3d 1302, 1308-09 (10th Cir. 2005);

*Saiz v. Ortiz*, 392 F.3d 1166, 1176 (10th Cir. 2004), *cert. denied,* 125 S. Ct. 2976 (2005).

Because Judge Murdoch's decision did not mention the ineffectiveness claims, I must

determine whether the deferential AEDPA standards apply to that aspect of Tovar's federal

petition.  It is clear that when a state court decision specifically chooses not to address an issue,

the *de novo* standard applies.[7]  On the other hand, the AEDPA standards apply to the most

summary of dispositions.  *E.g., Mitchell v. Esparza,* 540 U.S. 12, 15-16 (2003); *Early v. Packer,*

537 U.S. 3, 8 (2002); *Saiz,* 392 F.3d at 1176; *Gipson v. Jordan,* 376 F.3d 1193, 1196-97 (10th

Cir. 2004), *petition for cert. filed 3/14/05.*  Because Judge Murdoch did not specifically note that

he was declining to address the ineffectiveness issue, did not dismiss any claims on procedural

grounds, and dismissed the entire petition, I find that his decision should be considered as denying

relief on the merits.  *E.g., Griffin v. Lemaster*, 179 Fed. Appx. 555, 559 (10th Cir. 2006); *Aycox*

*v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999); *Hines v. Miller*, 318 F.3d 157, 160-161 (2nd Cir.

---

[7] An instance where the federal court would address a claim *de novo* is, for example, where the state court found counsel's conduct was not deficient conduct and thus did not address the prejudice prong of *Strickland.  E.g., Rompilla v. Beard,* 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice . . . and so we examine this element of the *Strickland* claim *de novo.*"); *accord Boltz v. Mullin,* 415 F.3d 1215, 1221 (10th Cir. 2005).

2003). Thus, I conclude the deferential standards apply to all the claims before me.

The phrase "clearly established federal law, as determined by the Supreme Court of the United States" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta" of the Supreme Court that set forth "the governing legal principle or principles . . . at the time the state court renders its decision." *Yarborough v. Alvarado,* 541 U.S. 652, 660-661 (2004) (internal quotations and citations omitted). "A state-court decision is contrary to [the Supreme] Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton,* 544 U.S. 133, 141 (2005) (internal citations omitted).

A state decision is not deemed  "contrary to" just because it fails to cite Supreme Court opinions, is unaware of Supreme Court precedent, or fails to address a claim or provide any reasoning for its decision. Rather, the focus is whether the reasoning or the result of the state court decision is either contrary to established precedent as defined above, or an unreasonable application thereof. *E.g., Mitchell,* 540 U.S. at 16; *Early,* 537 U.S. at 8; *Saiz,* 392 F.3d at 1176; *Gipson,* 376 F.3d at 1196-97.

"A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown,* 544 U.S. at 141. However, "it is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court" applied  "clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade,* 538 U.S. 63, 75-76 (2003) (internal quotations and citations omitted). "Rather, that

application must be objectively unreasonable." *Id.* at 76.[8]

Under § 2254(d)(2), a state decision rests on an "unreasonable determination of the facts" where Petitioner shows by "clear and convincing evidence" that the factual finding is erroneous. Otherwise, the factual findings are presumed correct. *E.g., Miller-El v. Dretke,* 545 U.S. 231, 240 (2005); 28 U.S.C. § 2254(e)(2).

If application of the above AEDPA standards does not foreclose further review and discussion by the federal court, habeas relief nonetheless cannot issue absent a finding of a constitutional violation sufficient to warrant such relief.[9]

## III.  Claims Regarding the Plea

*Nolo contendere* pleas in New Mexico amount to a confession of guilt and have the same legal consequences as a guilty plea. *See Thomas v. Kerby*, 44 F.3d 884, n.4 (10th Cir. 1995); *State v. Ball*, 718 P.2d 686, 693 (1986); *see also Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1219-1220 (10th Cir. 2000).  Accordingly, for the purposes of these proceedings, I will

---

[8]      The term 'unreasonable' is 'a common term in the legal world and, accordingly, federal judges are familiar with its meaning.' . . .  At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.
*Yarborough,* 541 U.S. at 664.

[9] *See, e.g., Turrentine v. Mullin,* 390 F.3d 1181, 1189-90 (10th Cir. 2004), *cert. denied,* 125 S. Ct. 2544 (2005); *Brown v. Uphoff,* 381 F.3d 1219, 1225 (10th Cir. 2004), *cert. denied sub nom,* 125 S. Ct. 940 (2005); *Aleman v. Sternes,* 320 F.3d 687, 690 (7th Cir.), *cert. denied,* 539 U.S. 960 (2003); *Herrera v. Lemaster,* 301 F.3d 1192, 1199 (10th Cir. 2002), *cert. denied,* 537 U.S. 1197 (2003).

Case 6:05-cv-01303-BB-CG   Document 31   Filed 12/08/06   Page 9 of 18

treat petitioner's *nolo contendere* plea the same as a guilty plea.  "A valid guilty plea may not be obtained through coercion." *Osborn v. Shillinger*, 997 F.2d 1324, 1327 (10th Cir.1993) (citations omitted).  However, the U.S. Supreme Court's longstanding test for determining the validity of a petitioner's plea is simply "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."[10]  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

Contrary to what he alleges in his federal petition, Tovar *was* provided an interpreter, both at the plea hearing and the sentencing hearing.  *See Doc. 1* at 5; *Plea Transcript* at 2; *Sentencing Transcript* at 2.  Also contrary to what alleges in his federal petition, Tovar's plea agreement was interpreted for him.  *Plea Transcript* at 10.  Thus, the primary underlying premise for his involuntary and unknowing plea claim, being a Spanish-speaker and a foreigner, utterly fails.  *See U.S. v. Avila-Sandoval*, 65 Fed. Appx. 227, 230 (10th Cir. 2003) ("To the extent Mr. Avila-Sandoval claims confusion based on his ability to speak only Spanish, we find such an argument wanting. The record clearly indicates Mr. Avila-Sandoval was provided with an interpreter throughout the process, the plea agreement was translated into Spanish, and his trial counsel at the change-of-plea hearing spoke Spanish.").

The plea agreement that Tovar signed before the plea hearing states that he could spend up to thirty years in prison.  *Ex. B* at 3.  It contains an admission of identity as to Tovar's prior federal felony drug charge.  *Id*. at 2.  Just above Tovar's signature, the agreement states, "I have read and understand this agreement . . . I agree to enter my plea, and I admit that I am the person

---

[10] Post AEDPA, voluntariness is a question of law.  *See Rodriguez v. Soares*, 28 Fed. Appx. 896, 899 (10th Cir. 2001); s*ee also Laycock v. New Mexico*, 880 F.2d 1184, 1186 (10th Cir.1989).  However, under either analysis, Tovar is not entitled to § 2254 relief.

previously convicted of felonies as indicated above and according to the terms and conditions set forth in this agreement." *Id.* at 5.  The agreement also states that Tovar waived his right to an appeal. *Id*. at 4.

At the plea hearing, Judge Murdoch reiterated each of the terms of the plea. *See Plea Transcript* at 7-8.  He told Tovar that "the bottom line is, I can sentence you anywhere from 0 to 30 years in prison." *Id.* at 4.  Tovar, with the help of an interpreter, stated that he understood, that no one had promised him anything that was not contained in the plea agreement, that no one had forced him to enter the plea, that he was entering the plea under his own free will, and that he was satisfied that the agreement was in his best interests. *Id* at 4, 8-10.

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Lasiter v. Thomas* 89 F.3d 699, 703 (10th Cir. 1996). The record, as shown above, contains numerous declarations by Tovar in open court and clearly reflects that Tovar understood the consequences of his plea.  As such, any argument by Tovar that he did not understand the consequences of his plea because no such plea existed in his native country is not grounds for finding that the plea was unknowing.

Likewise, Ayala's alleged promise that he could deliver a sentence of three years and for Tovar to "go along with the plea" is not grounds for finding that the plea was involuntary.  Tovar signed a plea agreement which stated that he faced a maximum sentence of thirty years, the trial court reiterated this information to Tovar before he entered his plea, and he solemnly indicated that he understood.  Erroneous plea predictions by attorneys in similar circumstances have not rendered the plea involuntary as a matter of law.  *See States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 2318 (2006); *United States v. Reyes Pena*, 216 F.3d 1204,

1212 (10th Cir. 2000).  Furthermore, an attorney's attempt "to persuade Petitioner that it was in his best interest to plea does not lead to the conclusion that his no contest plea was involuntary." *Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062 (1996).  Even when a defendant is "hounded, browbeaten" and cursed at by counsel to enter a plea, statements of voluntariness made in court control.  *U.S. v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996).

Even assuming, for the purposes of argument, that Ayala's conduct with regard to the plea was "ineffective," Tovar would not be entitled to habeas relief because, as discussed in more detail below, the inquiry is two-pronged and he utterly fails to establish prejudice.  The Tenth Circuit has so held in an almost identical habeas case involving a claim that Ayala's ineffectiveness in promising a particular sentence rendered a plea involuntary.  *See Berry-Gurule v. Lucero*, 215 F.3d 1336, 2000 WL 725479 * 3 (unpublished table decision) (10th Cir. 2000) ("We cannot grant Berry-Gurule habeas relief in this case because she has failed to meet the second part of the *Strickland* test by alleging facts that show prejudice.").

Consequently, I cannot conclude that the trial court's conclusion that the plea was knowing and voluntary was "contrary to" or "unreasonable" under the applicable AEDPA standards.

## IV.   Ineffective Assistance Of Counsel

Ineffective assistance of counsel is a mixed question of law and fact under the AEDPA standards.  *See Battenfield v. Gibson,* 236 F.3d 1215, 1236 (10th Cir. 2001).  Here, the state court decision does not discuss the ineffective assistance of counsel claim on the merits, however, the decision is still entitled to deference under the AEDPA standard of review.  *E.g., Griffin*, 179 Fed. Appx. at 559; *Aycox*, 196 F.3d at 1177; *Hine*, 318 F.3d at 160-161.  To establish ineffective

11

assistance of counsel, a habeas petitioner must satisfy a two-part test.  First, he must show that

counsel's performance fell below an objective standard of reasonableness.  *See Strickland v.*

*Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is highly

deferential; thus, the petitioner must overcome the presumption that the challenged action might

be considered sound trial strategy.  *Id.* at 689.  To be constitutionally ineffective, counsel's

conduct "must have been completely unreasonable, not merely wrong."  *Moore v. Gibson*, 195

F.3d 1152, 1178 (10th Cir. 1999)*, cert. denied,* 120 S. Ct. 2206 (2000); *see also Hawkins v.*

*Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).  Second, the petitioner must show he has been

prejudiced; that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694.  "In the

guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must

show that counsel's performance fell below an objective standard of reasonableness and that, but

for counsel's error, the defendant would have insisted upon going to trial."  *Silva*, 430 F.3d at

1099.  Conclusory assertions are insufficient to establish ineffective assistance.  *See United States*

*v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).  Because this test is two pronged, if either prong

is not met, it is unnecessary to discuss the other.  *E.g., Hill*, 474 U.S. at 60.

*A.  Resolution of the Federal Charge*

Tovar's allegation that his counsel was ineffective because he did not make arrangements

for a concurrent resolution of his federal charge is without merit.  Counsel cannot be deemed

ineffective for failing to raise a meritless issue.  *E.g., United States v. Dixon*, 1 F.3d 1080, n.5

(10th Cir. 1993), *abrogated on other grounds by Florida v. White*, 526 U.S. 559 (1999).  "A

state is not responsible for what might occur in federal criminal proceedings."  *Montoya  v.*

*Johnson*, 226 F.3d 399, 405 (5th Cir. 2000). "The discretion of a federal sentencing court cannot

be limited by a state court's judgment." *Id.* at 406; *see also United States v. Adair*, 826 F.2d

1040, 1041 (11th Cir.1987).

The record clearly shows that at the time of state court sentencing, the petition for

revocation of federal supervised release was still pending. Even presuming that the state court

could legally arrange for a joint resolution, it could not do so because the federal proceedings

were not over. All this aside, however, Tovar cannot satisfy the prejudice prong in *Strickland*

because the federal court gave Tovar exactly what he was seeking: a concurrent resolution. *See*

*Doc. 155 of  CR 99-690, Violation of Supervision Proceedings Minute Sheet* ("Notes: Ms.

Converse requests sentence to run concurrent with State sentence;" sentence imposed was four

months--concurrent to state sentence).

*B.  Failure to Investigate and Introduce "Exculpatory" Evidence at the Sentencing Hearing*

Tovar's argument that his counsel was ineffective for failing to investigate and present

certain items of evidence at sentencing also fails. Tovar thought that because on occasions he

resumed living with his ex-wife and had intercourse, and because they were assisting each other

financially, that he could not be guilty of "rape," and that his ex-wife simply fabricated the claims

for vindictive reasons. *Doc 1.* at 7; *Ex. B, C, D*; *Sentencing Transcript* at 12-13. He made these things

known to Ayala, wanted Ayala to "investigate" them and introduce them in mitigation at

sentencing to contradict his ex-wife's testimony about being battered, raped, and kidnapped.[11]  *Id.*

---

[11] Police discovered Tovar's ex-wife, Lillian, because of call from a friend who was concerned
about her well-being. The friend led police to Tovar's car, which had blood on the inside of it. The police
discovered Lilian in Tovar's apartment. She had been severely battered and was immediately sent to the
hospital. *See Police Report, Doc. 19*, at 8. At sentencing, Lillian testified that Tovar:
    "[C]ame inside [the car] and started hitting me, hitting me, hitting me.

Tovar must overcome the presumption that a challenged action might be considered sound trial strategy. *See Strickland,* 466 U.S. at 689.  It is reasonable for counsel to curtail an investigation if available information indicates that further inquires would be fruitless.  *See Wiggins v. Smith*, 539 U.S. 510, 525 (2003); *see also Petsche v. Tafoya*, 146 Fed. Appx. 306, 311 (10th Cir. 2005).  "A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 521-522.

Joint economic activity, a cell phone record showing that Tovar called his daughter during the kidnapping, and family affidavits stating that Tovar's ex-wife had tendencies to fabricate or exaggerate do not conclusively demonstrate that Tovar did not batter, rape, or kidnap his ex-wife.[12]  There was certainly evidence to the contrary; Tovar had a history of battering her.  *See Sentencing Transcript* at 6, 8.  In not "investigating" and presenting certain items of evidence at sentencing, counsel's strategy is evident.  Rather than attacking the credibility of a sympathetic

---

> Afterwards, he started the car and, on the way to – I don't even know
> where he took me, he punched me and he said to me that he was going to
> kill me.  And he was hitting me and hitting me.  He told me to start
> praying because that night I was going to die."

*Sentencing Transcript* at 3.

[12] More specifically, the evidence provided by Tovar in support of his ineffectiveness claim included: 1) a 16 minute long conversation with the couple's daughter during the middle of the alleged kidnapping incident (supported by cell phone records), 2) statements that his ex-wife sought him out in the months she was supposedly avoiding him and being stalked (supported by family affidavits and an unsworn/unauthenticated family friend memorandum), 3) joint economic activity during the period of the alleged stalking (supported by video rental account, checks for car repair, cell phone bills, and checks for cable television installation), 4) statements that Tovar would frequently spend the night at his ex-wife's home (supported by family affidavits and an unsworn/unauthenticated family friend memorandum), 5) statements that the ex-wife had a motive to fabricate (supported by an unsworn/unauthenticated family friend memorandum), 6) statements that after the second incident, the ex-wife and the children did not attend counseling (supported by an unsworn/unauthenticated family friend memorandum). *Doc 1.* at 7; *Ex. B, C, D.*

victim and taking an approach at sentencing that the Tovars were resuming family life so there

could be no rape, Tovar's counsel relied on an objective medical evaluation on the date of the

incident which indicated that a severe battering took place.  *See Doc. 19* at 11-12.  Tovar's

counsel chose, instead, to present testimony at sentencing regarding a diagnostic evaluation and

from Tovar's mother.  *See Sentencing Transcript* at 8-12.

Repentance born of a failed strategy does not raise a genuine issue of ineffectiveness,

particularly where, as here, Tovar's interpretation of the law influenced Judge Murdoch's decision

in sentencing.  *E.g., Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005); *Rogers v. U.S.*, 91 F.3d

1388, 1392 (10th Cir. 1996).  At the sentencing hearing, Tovar, through his interpreter, told

Judge Murdoch:

> THE DEFENDANT: I would like to say that there's
> confusion with all of this that is happening.  She
> [Lillian] is contradicting herself with some of the
> things she says . . . .  My children saw me sleeping in
> the house for three days, and the neighbor, so it's
> not possible that I raped her, because previously we
> had a relationship together.  What happened was
> there was a friend in my apartment–
> THE COURT: *Wait, wait, wait.  You think if you
> had a prior relationship with her you couldn't rape
> her?*
> THE DEFENDANT:  Yes.  Before that, she would
> be willing to be together with me and have
> relationship, two --the two of us.

*Id*. at 12-13 (emphasis added).

Tovar fails to establish his counsel was ineffective and does not even make the assertion

that but for Ayala's failures he would have gone to trial instead of entering a plea.  *See Silva*, 430

F.3d at 1099; *Hill*, 474 U.S. at 59; *Taylor*, 454 F.3d 1075, 1080 (10th Cir. 2006). He fails on

both prongs of the *Strickland* test, whether my review is *de novo* or concentrating on whether the state decision was "contrary" or "unreasonable."

## V.  Fifth Motion for Appointment of Counsel

Tovar has requested that the Court appoint him counsel.  See *Doc. 25-27*.   As explained to Tovar previously, he has no right to appointed counsel.  *See Clark v. Tansy*, 13 F.3d 1407, 1410 (10th Cir. 1993); *Carter v. Montgomery*, 769 F.2d 1537, 1543 (11th Cir. 1985).  Ordinarily, there is no reason to appoint counsel unless the case has reached the stage of proceedings where an evidentiary hearing is required.  *See e.g., United States v. Leopard*, 170 F.3d 1013, 1015 (10th Cir. 1999); *Swazo v. Wyoming Dept. of Corrections*, 23 F.3d 332, 333 (10th Cir. 1994).  I have indicated above that an evidentiary hearing is not required.  Thus, Tovar's fifth motion for appointment of counsel should be denied.

## VI.  Motion for Copies

Tovar has also requested that he be provided with copies of all documents that have been filed with the Court.  Tovar claims that all documents were inadvertently lost.  *See Doc. 28*.  In light of the significant amount of filings in this case, copying all documents that have been filed with this Court would impose a "significant and unjustified burden and expense on the court." *Lyons v. McGinnis*, 2006 WL 1720383 at *2 (W.D.N.Y. 2006); *see also Negron v. Adams*, 229 F.3d 1164, 2000 WL 1152554 at *3 (unpublished table decision) (10th Cir. 2000).  As such, the Court will provide Tovar only with copies of documents that he needs to file his objections. Accordingly, by copy of this Proposed Findings and Recommended Disposition, Tovar is being provided with the following documents (*Docs. 1, 11, 12, 13, 15, 18, 24*), as well as a copy of the current docket sheet.  He may review the docket sheet and request copies of particular documents

16

upon a showing that the requested documents are necessary for the filing of his objections.

## VII.  Motion For Leave to Invoke Provisions of the FRCP and

## Motion for an Interpreter

In his motion for leave, Tovar asks the Court to invoke FED. R. CIV. P. 12, 43(f), and all

other rules pertaining to discovery.  *See Doc. 30.*  In support, Tovar states that he needs an

interpreter to aid him in filing pleadings and interpreting orders, that he foresees the need for

discovery, and that he foresees the need for implementing Rule 12 in response to Respondents'

Answer and motion to dismiss.  *Id.*  Rule 11 of the Rules Governing Section 2254 Cases states:

"The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these

rules, may be applied, when appropriate, to petitions filed under these rules."  As explained above,

I am recommending that these proceedings be dismissed.  Therefore, discovery need not be taken

and FED. R. CIV. P. 12 need not be invoked.  As explained below, FED. R. CIV. P. 43(f) need not

be invoked either.  As such, I recommend that the motion for leave to invoke the provisions of the

FRCP be denied.

Tovar also moves this Court to appoint an interpreter to act as his legal aid in translating

things filed of record and in preparing future pleadings.  *See Doc. 29.*  In support of the motion

for an interpreter, Tovar cites FED. R. CIV. P. 43(f), which discusses the appointment of an

interpreter for the purpose of taking testimony in open court.  Clearly, that rule does not apply.

Besides 43(f), Tovar cites no other authority and the Court has found none to support his motion.

As such, I recommend that the motion for an interpreter be denied.

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1.      Respondents' motion to dismiss (*Doc. 11*) be granted;

2.      Petitioner's fifth motion for appointment of counsel (*Doc. 25*) be denied;

3.      Petitioner's motion for copies (*Doc. 28*) be granted in part and denied in part;

4.      Petitioner's motion for leave to invoke provisions of the FRCP *(Doc. 30)* be

        denied;

5.      Petitioner's motion for an interpreter *(Doc. 29)* be denied; and

6.      The § 2254 petition be dismissed with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF**

**SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file

written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A**

**party must file any objections with the Clerk of the District Court within the ten day period**

**if that party wants to have appellate review of the proposed findings and recommended**

**disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____

UNITED STATES MAGISTRATE JUDGE