IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

CARLOS TOVAR MENDOZA,

        Petitioner,

v.                                  No. CIV 05-1303 BB/CEG

ANTHONY ROMERO, Director, Regional
Correctional Center, and GARY KING,
Attorney General for the State of New Mexico,

        Respondents.

**SEALED**
**FINDINGS AND DISPOSITION**
**ON**
**PETITION FOR HABEAS CORPUS**

THIS MATTER is before me on the Petition of Carlos Tovar Mendoza (hereinafter "Defendant") pursuant to 28 U.S.C. § 2254. Having reviewed all the pleadings, the evidentiary hearing and Proposed Findings and Recommended Disposition of Magistrate Judge Carmen E. Garza, and the Respondents' objections thereto, the Court must decline to grant the writ.

*Background*

This Court will adopt the background facts set forth by Judge Garza in her Proposed Findings and Recommended Disposition. Additionally, since this case implicates both the constitutional rights of Defendant and the integrity of the plea

process, a substantial portion of the plea colloquy between this Defendant and Judge

Murdoch must be considered.

> THE COURT:
> Counsel, it is my understanding that Mr. Tovar is prepared to offer a plea of no contest to the allegations of kidnaping, second degree felony; criminal sexual penetration, second degree felony; aggravated battery against a household member, third degree felony; criminal sexual penetration in the commission of a felony, second degree felony. Counts I, II, and III will all run consecutively to one another, and I guess, the remaining count – what is that, count I of the information? – will run concurrently; is that right, Mr. Benford?
>
> MR. BENFORD: That's in the Court's discretion, Your Honor.
>
> THE COURT: All right, good deal. So that exposure looks like it's 0 to 30 years. Is that true, Mr. Benford?
>
> MR BENFORD: Yes, sir.
>
> THE COURT: Mr. Ayala, is that the plea, as you understand it?
>
> MR. AYALA: Yes, sir.
>
> MR BENFORD: Your Honor, if I may interrupt.
>
> THE COURT: Sure.
>
> MR. BENFORD: I apologize.
>
> There is one other thing that I had in my plea letter to Mr. Ayala, and that is, as you know, the second degree kidnaping is discretionary, whether it is a serious violent felony offense or not. And I just want to make sure that they know that I will be reserving the right to argue that at sentencing.
>
> THE COURT: All right.
>
> Mr. Tovar, you've heard all of the promises that have been made on the record this morning, haven't you?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: Has anyone promised you anything that we have not spoken about?
>
> THE WITNESS: No, sir.
>
> THE COURT: Are you doing this of your own free will?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: After examining the evidence against you, as well as the agreement that's been offered by the state, are you satisfied that this agreement is in your best interest?
>
> THE WITNESS: Yes, sir.

THE COURT: Are you under the influence of any alcohol or any narcotics in court today?

THE WITNESS: No, sir.

THE COURT: Do you have any physical or mental health problems that would make it difficult for you to understand what we're talking about?

THE WITNESS: No, sir.

THE COURT: Pursuant to this agreement, it's my understanding you're prepared to offer pleas of no contest to several felonies. The bottom line is, I can sentence you anywhere from 0 to 30 years in prison. Do you understand that?

THE WITNESS: Yes, sir.

THE COURT: And with that understanding, do you still wish to plead no contest?

THE WITNESS: No, sir – yes, that's fine.

Tr. April 14, 2003 pp. 2-5.

Additionally, after Judge Garza held an evidentiary hearing and entered her proposed findings, this Court allowed Respondents to expand the record. This Court permitted the filing of two exhibits which were produced at the hearing but never included in the record. They consist of a letter from the New Mexico Disciplinary Board acknowledging receipt of Defendant's complaint against Mr. Ayala (Pl.'s Ex. 14) and the Board's findings that there was "insufficient evidence to support allegations that Mr. Ayala has violated the Rules of Professional Conduct" (Pl.'s Ex. 13 p. 1).[1]

Moreover, the Board specifically responded to Mr. Tovar Mendoza:

In your complaint you seemed to allege that Mr. Ayala made false promises regarding the outcome of your case, that you unknowingly

---

[1]    The Court recognizes these letters are marked Confidential, but Petitioner has waived any privilege by offering them in evidence and since Mr. Ayala was cleared of any potential disciplinary charges, confidentiality would not seem necessary to protect his interests but this opinion is sealed for that reason.

3

entered a plea, and that Mr. Ayala was ineffective in his representation of you.

Mr. Ayala denied promising any particular outcome in your case.  Please understand that in a situation such as this, in which there is little if any proof other than one individual's word against another's, we would lack sufficient proof to sustain charges of misconduct.

Pl.'s Ex. 13 p. 1.

Respondent also submitted two documents: (1) a letter from Assistant Attorney General Margaret McLean to Defendant's attorney, and (2) his response.  In response to Ms. McLean's request that Mr. Ayala contact her to discuss an affidavit for the hearing before Judge Garza, Mr. Ayala responded:

I received your certified letter on this date regarding the above cause of action.  In light of the fact that I am a target of a criminal investigation I respectfully refuse to testify or give an affidavit in the above cause.

### *Discussion*

Judge Garza recommends that the Court find Defendant's plea was involuntary as a result of the ineffective assistance of his counsel, Mr. Ayala.  This is not the first time a court has been faced with similar allegations on a habeas petition alleging Mr. Ayala's perfidy to the detriment of his clients.  *See, e.g., Berry-Gurule v. Lucero*, 215 F.3d 1336 (10th Cir. 2000) (unpublished); *Matter of Ayala*, 693 P.2d 580 (N.M. 1984). The Court therefore has little reason to doubt Judge Garza's conclusion that Mr. Ayala (1) told Defendant he had reached a side deal with Judge Murdoch for a three-year

sentence;[2] (2) Mr. Ayala never translated the plea agreement into Spanish or read it to Defendant;[3] and (3) Mr. Ayala never investigated witnesses and evidence that might have challenged Lilia Tovar's testimony regarding the kidnaping and rape to which Defendant pled *nolo contendere*.[4]  This Court's difficulty arises from allowing these arguments to prevail after Defendant repeatedly represented under oath that (1) he read and understood the plea agreement; (2) he understood he could be sentenced to thirty years; and (3) no one had made any outside promise to him.  In other words, if Defendant is allowed to recant his sworn testimony based on an alleged secret promise from defense counsel, how can any judge rely on a sworn plea colloquy?

I.   *Defendant Repeatedly Perjured Himself before Judge Murdoch*

The fundamental problem I find with Defendant's Habeas Corpus Petition is that it is built entirely on Defendant's admitted perjury before Judge Murdoch.  In his *pro se* Petition for Habeas Corpus, Defendant maintained:

> I did not understand the consequences of my plea.  No interpreter was provided to me at the plea proceeding, and the plea agreement was not read to me in Spanish before I signed it.

RP0032 ¶ b.1.

---

[2]    It is interesting that in his initial habeas petition Defendant mentions great performance promises by Mr. Ayala but not representations of a promise by Judge Murdoch.

[3]    As the above quoted transcript clearly indicates, however, Defendant's assertion that "[n]o interpreter was provided to him at the plea proceeding" is clearly false, since the transcript clearly indicates the interpreter was sworn and informed Defendant of the oath and the remainder of the proceedings.  Tr. 2.

[4]    He continues to acknowledge he beat Ms. Tovar.

These assertions are flatly contradicted by the transcript of the plea colloquy. As noted, Ms. Dinorah Gutierrez, a certified interpreter, was sworn in and translated the full proceedings into Spanish.  (Tr. 2, April 14, 2003).  Moreover, Judge Murdoch specifically asked Defendant if he understood the plea agreement and told Defendant to stop him if he did not understand any question.  (*Ibid.* p. 10).  Specifically, the following exchange took place between Defendant and Judge Murdoch:

> THE COURT: Mr. Tovar, the plea agreement is in English.  Has it been interpreted for you?
> THE WITNESS: Yes, sir.
> THE COURT: And are you satisfied that you understand what it says?
> THE WITNESS: Yes, sir.
> THE COURT: Do you have any question about this agreement, either for me or for your attorney, at this time?
> THE WITNESS: No, sir.

*Id*.

In exchange for the State's agreement to dismiss the prior Information alleging sexual assault based on the September incident and not to seek Habitual Offender penalties, Defendant specifically agreed to plead no contest to (1) second degree Kidnaping; (2) Criminal Sexual Penetration, *persona injuri*; (3) Aggravated Battery Against a Household Member; and (4) Criminal Sexual Penetration (in commission of a felony).

II.   _Allowing Defendant to Assert his Plea Agreement was not Free and Voluntary Impinges the Integrity of the Judicial System_

Judge Murdoch recited the essence of the agreement in front of Defendant including the fact the "exposure looks like it's 0 to 30 years." (*Ibid.* at 3). At this point the prosecutor interrupted to point out, "the second degree kidnaping is discretionary, whether it is a serious violent felony offense or not. And I just want to make sure that they know that I will be reserving the right to argue that at sentencing." *Id*. After twice noting he could sentence Defendant to anywhere between 0 and 30 years, Judge Murdoch continued addressing Defendant directly:

> Mr. Tovar, you've heard all of the promises that have been made on the record this morning, haven't you?
> THE WITNESS: Yes, sir.
> THE COURT: <u>Has anyone promised you anything that we have not spoken about?</u>
> THE WITNESS: <u>No.</u>
> THE COURT: Has anyone forced you or threatened your (sic) to enter this plea?
> THE WITNESS: No, sir.
> THE COURT: Are you doing this of your own free will?
> THE WITNESS: Yes, sir.
> THE COURT: After examining the evidence against you, as well as the agreement that's been offered by the state, are you satisfied that this agreement is in your best interest?
> THE WITNESS: Yes, sir.

Tr. April 14, 2003 pp. 3-4 (emphasis added).

Defendant argues that his failure to understand the consequences of his plea was exacerbated because "[i]n my native country, plea agreements do not exist, and I did not understand the implications of agreeing that the prosecution had certain proof,

7

despite the plea colloquy." (*Pro se* Petition for Habeas, RP0032 b.2).  This, of course, ignores the fact that Defendant had previously had substantial involvement with the criminal justice system.  In addition to the then extant Information charging Defendant with criminal sexual penetration of Lilia Tovar in September, Defendant had previously been charged in Bernalillo County Metropolitan Court with Battery on the Person of Another.  (Docket No. CR 25662/90).  He was arrested for Aggravated Battery and Domestic Violence on two additional occasions, but the charges were dismissed or *nolle prossed*.  He was also arrested at least fifteen times for driving infractions ranging from Driving While Intoxicated to driving on a suspended license and speeding.  *Id*.  Defendant therefore had appeared in Metropolitan Court on multiple occasions.  More significantly, Defendant went to trial and was convicted in the United States District Court of Conspiracy to Possess With the Intent to Distribute and Possession with the Intent to Distribute, 46 kilograms of marijuana.  He was sentenced to 48 months which included a three level sentence enhancement based on Defendant's obstruction of justice for testifying falsely at trial.[5]

In reviewing state court proceedings, the federal court does not sit as a "super" state Supreme Court and the writ cannot be used as a substitute for appellate review.  *Scrivner v. Tansy*, 68 F.3d 1234 (10th Cir. 1995); *Miller v. Crouse*, 346 F.2d 301 (10th

---

[5]        In addition to testifying he knew nothing about the 100 pounds of marijuana in the trunk of the rental car he was driving, Defendant testified he had a good job at the Taco Cabana and did not need to smuggle drugs.  Other testimony at trial made it clear that Defendant was letting his cousin, an illegal alien, work at Taco Cabana under Defendant's name.  This Court therefore increased Defendant's offense status by three levels for obstruction of justice based on this perjury.

Cir. 1965). The federal court can grant such relief only when the state's detention is a result of a violation of the Constitution or laws or treaties of the United States. *Stone v. Powell*, 428 U.S. 465 (1976). The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 22 U.S.C. § 2254(d), was enacted to limit the availability of habeas relief. *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007). Under that Act the writ may not be granted unless the judgment of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law ...." 28 U.S.C. § 2254(d)(1). Based on this record, I cannot say that Judge Murdoch's acceptance of Defendant's plea as voluntary violated the AEDPA standard.

Approximately six months after he was sentenced, Defendant filed his *pro se* Petition for Habeas Corpus. As here, he argued his plea was not knowing and voluntary since it was based on Mr. Ayala's promise that "I would get no more than three years." RP0073.[6] Judge Murdoch considered Plaintiff's contention and found: "The petitioner freely and voluntarily entered his plea with full knowledge of the consequences." The court, as reflected in the transcript, clearly established that Mr. Tovar read, understood and wanted the agreement. *Id*. In the present proceeding Judge Murdoch filed an affidavit outlining his standard practice and stated:

> If at any time a defendant answers "No" to any question during the plea proceeding or appears to be confused, I will stop the plea proceeding and make a further inquiry on the record. ...

---

[6] As previously noted, in the initial Petition Defendant did indicate that Mr. Ayala indicated Judge Murdoch was represented to have acquiesced to this agreement.

I interact with defendants "a lot" and have no problem with interacting with defendants to respond to questions and confirm the understanding with the defense attorney.

**J. Murdoch aff. ¶ 41, ¶ 53.**

Defendant complains Judge Murdoch allowed attorney Ayala to waive the factual basis for the plea.  However, there is no constitutional requirement that a factual basis be stated on the record.  *Anaya v. Rodriguez*, 372 F.2d 683 (10th Cir. 1967); *Collins v. Israel*, 538 F. Supp. 1211 (E.D. Wis. 1982).  Given the direct questions posed by Judge Murdoch and Defendant's clear answers under oath, this must be considered a credibility finding and a rejection of Defendant's perjury during the plea colloquy. This Court is not therefore in a position to ignore or circumvent Judge Murdoch's repeated conclusion that Defendant's plea was free and voluntary.  *Weaver v. Palmateer*, 455 F.3d 958, 964 (9th Cir. 2006).  Judge Murdoch's finding was also accepted by the New Mexico Supreme Court when it denied Defendant's Petition in summary fashion.

The question, then, is whether the conclusion of the New Mexico courts that Defendant's plea was free and voluntary is "contrary to, or involved an unreasonable application of, clearly established Federal law...."  28 U.S.C. § 2254(d)(1).

The legal validity of plea bargains under Federal law was not clear until *Santobello v. New York*, 404 U.S. 257 (1971).  Within days after the *Santobello* opinion was filed, Gary Darnell Allison pled guilty during his trial in North Carolina. *Blackledge v. Allison*, 431 U.S. 63, 76 (1977).  Allison was sentenced to 7-21 years and

filed a collateral attack in state court alleging his attorney promised "he was only going to get 10 years and that he had been instructed to answer the questions so that the Court would accept the guilty pleas." 431 U.S. at 63. Since the procedure for accepting plea agreements was far less sophisticated at the time, there was no transcript and only a printed questionnaire for Allison to indicate he understood the plea agreement and was signing it voluntarily. 431 U.S. at 67. Defendant petitioned the federal district court for habeas relief which was summarily denied. The Fourth Circuit reversed and remanded for an evidentiary hearing reasoning "that when a *pro se*, indigent prisoner makes allegations that if proved would entitle him to habeas corpus relief, he should not be required to prove his allegations in advance of an evidentiary hearing." 431 U.S. at 70. The Supreme Court affirmed the Fourth Circuit and specifically noted, "the representation of the defendant, his lawyer, and the prosecutor at such hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." 431 U.S. 73-74. The Court, however, pointed out that the plea agreement therein was worked out secretly and without any examination at a public hearing:

> Allison was arraigned a mere 37 days after the *Santobello* decision was announced, under a North Carolina procedure that had not been modified in light of *Santobello* or earlier decisions of this Court recognizing the process of plea bargaining. That procedure itself reflected the atmosphere of secrecy which then characterized plea bargaining generally. No transcript of the proceeding was made. The only record was a standard

11

> printed form.  There is no way of knowing whether the trial judge in any
> way deviated from or supplemented the text of the form.  The record is
> silent as to what statements Allison, his lawyer, or the prosecutor might
> have made regarding promised sentencing concessions.  And there is no
> record at all of the sentencing hearing three days later, at which one of the
> participants might well have made a statement shedding light upon the
> veracity of the allegations Allison later advanced.

431 U.S. at 76-77.  Given this situation the High Court found a remand for a further
record was appropriate.

Even though plea bargaining has now become a routine fixture on the judicial
landscape and transcripts are *de rigeuer*, federal courts often conduct factual inquiry
during habeas review into allegations of undisclosed promises of counsel that prompted
a guilty plea.  *See, e.g., Tower v. Phillips*, 979 F.2d 807 (10th Cir. 1992, *vac'd on state
procedural default*, 7 F.3d 206 (11th Cir. 1993); *Lesko v. Lehman*, 925 F.2d 1527 (3d Cir.
1991).  However, federal courts have also recognized that with the opportunity to
openly discuss the plea agreement with the judge comes the obligation to tell the truth
when questioned under oath.  *United States v. Padilla-Galarza*, 351 F.3d 594, 598 (1st
Cir. 2003); *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 651 (E.D. Mich. 2002).  Indeed, the
plea agreement signed under oath shifts the burden of any challenge to the defendant.
*Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994); *Rupert v. Johnson*, 79 F. Supp. 2d

680, 705 (W.D. Tex. 1999).  Both federal[7] and state[8] courts have therefore repeatedly rejected habeas claims that defendant's attorney promised defendant a more lenient sentence when the defendant has subsequently assured the judge under oath in open court that no promises have been made.

The Tenth Circuit found a guilty plea was voluntary on analogous facts in *Worthen v. Meachum*, 842 F.2d 1179 (10th Cir. 1988), *overruled other grounds*, *Coleman v. Thompson*, 501 U.S. 722 (1991).  The defendant therein argued his plea was involuntary because his counsel had misrepresented to him that defendant would be paroled in five or six years and would be given immunity from prosecution on other charges.  842 F.2d at 1183.  The Tenth Circuit noted, "Worthen repeatedly stated on the record that he had not been coerced, threatened, or promised anything by his attorney or anyone else."  842 F.2d at 1183.  The Court concluded, "When we examine the present case under the standards utilized in *Blackledge*, we conclude that the broken promises Worthen alleges are insufficient to undermine the voluntariness of his plea." *Id*.

The Tenth Circuit again rejected a challenge to the voluntariness of a plea based on allegations of attorney misrepresentation in *Laycock v. State of New Mexico*, 880 F.2d

---

[7]    *United States v. Padilla-Galarza*, *supra*; *United States v. Howell*, 661 F.2d 96, 97 (8th Cir. 1981); *Thirkield v. Pitcher*, *supra*; *Rupert v. Johnson*, *supra*.

[8]    *Stubbs v. State*, 171 S.W.3d 139, 143 (Mo. App. 2005); *Autry v. State*, 549 S.E.2d 769, 771 (Ga. App. 2001); *Bundy v. State*, 965 S.W.2d 402, 405 (Mo. App. 1998); *Wolfe v. State*, 485 S.E.2d 367, 370 (S.C. 1997); *State v. Williams*, 688 So. 2d 1343 (La. App. 1997); *Bermudez v. State*, 603 So. 2d 657, 658 (Fla. App. 1992) *People v. Petrovic*, 497 N,E.2d 199 (Ill. App. 1986).

1184 (10th Cir. 1989).  The defendant pled guilty to an armed robbery with a firearm enhancement in exchange for the state dismissing other charges.  After he was sentenced to nine years, he filed for post-conviction relief which the trial judge denied. The New Mexico Supreme Court also denied his petition for habeas corpus and he petitioned the Federal District Court.  Laycock alleged his attorney promised if he pled guilty and was accepted into Delancey Street, a rehabilitation program, he would receive a suspended sentence.  In affirming the federal District Court's denial of the petition, the Tenth Circuit said:

> The facts and circumstances support the district court's conclusion that counsel did not materially misrepresent the plea.  Delancey Street was not mentioned in the written plea agreement, which Laycock signed following an explanation by the state judge.  The judge asked Laycock specifically if other promises had been made and he replied "no."  Solemn declarations in open court carry a strong presumption of verity." *Estrada*, 849 F.2d at 1306 (citing *Blackledge*, 431 U.S. at 74).  None of the participants mentioned Delancey Street at the plea or sentencing hearing. Laycock did not include it in his petition for post conviction relief.

880 F.2d at 1187.

This case is difficult because based on his disciplinary record, it is easy to convince oneself Mr. Ayala might engage in the type of misrepresentation alleged by Defendant.  Defendant also has the benefit of having members of his immediate family testify to having heard representations regarding a deal with Judge Murdoch. Unfortunately, Defendant also carries the weight of a reputation for a lack of veracity. Even accepting all of Defendant's claims regarding Mr. Ayala's promises as true,

14

however, they cannot excuse Defendant's blatant and repeated misrepresentations under oath to Judge Murdoch that he had read the plea agreement and no one had promised him anything else.

While I have enormous respect for Judge Garza and have given her recommendations the most careful review, I cannot persuade myself Carlos Tovar Mendoza has met his burden to prove that Judge Murdoch's conclusion that petitioner freely and voluntarily entered this plea with full knowledge of the consequences was "contrary to, or involved an unreasonable application of, clearly established Federal law."

Given this disposition, it is unnecessary for the Court to engage in the two-pronged analysis required under *Strickland v. Washington*, 466 U.S. 668 (1984).

## O R D E R

For the above stated reasons, Carlos Tovar Mendoza's *Petition for Writ of Habeas Corpus* is DENIED, and this action is DISMISSED.

SO ORDERED this 6th day of January, 2009.

_____
**BRUCE D. BLACK**
**United States District Judge**

15