IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

CARLOS TOVAR MENDOZA,

Petitioner,

v.                                                          No. CIV 05-1303 BB/CEG

ANTHONY ROMERO, Director, Regional
Correctional Center, and GARY KING,
Attorney General for the State of New
Mexico,

Respondents.


SEALED
MEMORANDUM OPINION ON MOTION FOR RECONSIDERATION


THIS MATTER is before the Court on Petitioner's Motion for Amendment Pursuant to Rules 52 and 59 of the Federal Rules of Civil Procedure. [Doc. 127] Petitioner correctly asserts that the Court's previous findings and disposition in this case did not explicitly discuss one issue raised by Petitioner and addressed by Magistrate Judge Garza in her report and recommendation. That issue concerns the failure of Anthony Ayala, Petitioner's trial counsel in the state-court proceedings, to conduct an adequate investigation prior to Petitioner's plea hearing. While the Court believes this issue was subsumed within the analysis contained in the prior Memorandum Opinion, further discussion is warranted to explicate the link between

these two theories under the second prong of *Miller v. Champion*, 262 F.3d 1066 (10th Cir. 2001).[1]

## *Discussion*

A petitioner challenging a guilty plea on the basis of ineffective assistance of counsel must show two things: (1) counsel's performance was so deficient as to be objectively unreasonable, in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Miller v. Champion*, 262 F.3d at 1071; and (2) there is a reasonable probability that, but for counsel's errors, the petitioner would not have pleaded guilty but instead would have insisted on going to trial. *Id.* at 1072.[2] The second prong of the test is met simply by proving the ultimate issue – that the petitioner would have refused to plead guilty if counsel had represented him adequately. *Id.* at 1075. If petitioner has not satisfied one prong, the court need not consider the other. *Strickland v. Washington*, 466 U.S. at 697. The Court previously found that whether or not his counsel committed fraud, because Petitioner told Judge Murdoch that he was aware of the evidence and was made no promises, he was prohibited from now claiming he should benefit from his perjury. *Cunningham v. Diesslin*, 92 F.3d 1054, 1012 (10th Cir. 1996); *United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993). Indeed, accepting Petitioner's version of

---

[1] The test used in the *Miller* case is based on two Supreme Court opinions: *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For ease of reference, however, the Court will refer to the test as the *Miller* test.

[2] Although a few earlier Tenth Circuit cases had indicated the petitioner must also establish a reasonable probability that he would have prevailed at such a trial, the Tenth Circuit expressly rejected that requirement in *Miller*. 262 F.3d at 1073-74.

the facts he could potentially meet both prongs of *Miller* but for the plea colloquy. It is his own perjury that dooms Petitioner's arguments under either theory of ineffective assistance. He was prejudiced, if at all, by Mr. Ayala's alleged promise of a deal and his own attempt to cover it up.

The plea colloquy also established Petitioner was fully aware of both the state of the evidence and the potential sentence in the case:

> THE COURT: ... Counsel, it is my understanding that Mr. Tovar is prepared to offer a plea of no contest to the allegations of kidnaping, second degree felony; criminal sexual penetration, second degree felony; aggravated battery against a household member, third degree felony; criminal sexual penetration in the commission of a felony, second degree felony. Counts I, II, and III will all run consecutively to one another, and I guess, the remaining count – what is that; count I of the information? – will run concurrently; is that right, Mr. Benford?
>
> MR. BENFORD: That's in the Court's discretion, Your Honor.
>
> THE COURT: All right, good deal. <u>So that exposure looks like it's 0 to 30 years.</u> Is that true, Mr. Benford?
>
> MR. BENFORD: Yes, sir.
>
> THE COURT: Mr. Ayala, is that the plea, as you understand it?
>
> MR. AYALA: Yes, sir.
>
> ...
>
> THE COURT: <u>After examining the evidence against you</u>, as well as the agreement that's been offered by the state, are you satisfied that this agreement is in your best interest?
>
> THE WITNESS: Yes, sir.
>
> ...
>
> THE COURT: Pursuant to this agreement, it's my understanding you're prepared to offer pleas of no contest to several felonies. The bottom line is, <u>I can sentence you anywhere from 0 to 30 years in prison</u>. Do you understand that?
>
> THE WITNESS: Yes, sir.

THE COURT: And with that understanding, do you still wish to plead no contest?

THE WITNESS: No, sir – yes, that's fine.

Tr. (April 14, 2003, pp. 2-4) (emphasis added).

Thus, the legal effect of the plea colloquy resolves the prejudice prong of *Miller* against Petitioner. *See Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (defendant "suffered no prejudice from his attorney's prediction because prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court"); *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (no prejudice from counsel's negligence where possible sentence fully explained by court); *United States v. Guillen-Lobo*, 2008 WL 5121307 (W.D. Va.) ("Even assuming *arguendo* that counsel's performance was deficient, Guillen-Lobo was not prejudiced because Guillen-Lobo was repeatedly informed of the potential severity of his sentence."); *United States v. Shotonwa*, 2008 WL 4164826 (S.D. Tex.); *Salgado v. United States*, 2008 WL 509317 *4 (N.D.W. Va.); *United States v. Walton*, 2000 WL 1278487 *5 (D. Kan.). Even if the Court were required to analyze the ineffective assistance based on the failure to investigate theory, it comes back to the fact that even Petitioner alleges he pled because of his counsel's alleged promise. He cannot, therefore, satisfy the second prong of *Miller*.

In the present situation, it is clear Petitioner initially wanted his attorney to investigate and interview certain potential witnesses because he fired his first attorney, Matthew Torres, for not performing these very tasks. However, within approximately

a month of employing Mr. Ayala, Petitioner was willing to enter a plea agreement knowing Attorney Ayala had also failed to do any investigation or interview the same potential witnesses.   The only thing that changed was Mr. Ayala's alleged representation, and Petitioner's apparent reliance thereon, that Mr. Ayala had a sentencing deal with Judge Murdoch. What Petitioner wanted, however, was not a chance to prove his innocence but a chance at the three-year sentence he thought Mr. Ayala could procure.   Therefore, he was not prejudiced by Mr. Ayala's failing to investigate as that was not a motivating factor in his plea.

However, since Mr. Ayala has denied that he ever promised Petitioner a three-year sentence,[3] the Court will further address Petitioner's ineffective assistance based on the failure to investigate.   The strength or weakness of the prosecution's case is relevant only because it can offer "circumstantial evidence of what the petitioner would have done had his counsel not proved to be ineffective."   *Id.* at 1074.   In other words, in the average case, the stronger the prosecution's case, the more likely it is that the petitioner would have entered a plea rather than going to trial even if counsel had performed adequately.

Magistrate Judge Garza has determined that Mr. Ayala's investigation in this case was woefully deficient, and the Court has no reason to disagree with that

---

[3] This denial is referenced in the letter from the New Mexico Disciplinary Board referenced by this Court in the initial memorandum opinion.

determination.  Therefore, Petitioner has met the first prong of the *Miller* test.[4]  The critical question here, of course, is whether the second prong of the test, the prejudice prong, has been satisfied.

The report and recommendation by the Magistrate Judge determined that prejudice existed primarily because, if Petitioner had gone to trial instead of entering into a plea, it is likely he would have been acquitted of two of the charges against him – the rape charges that the victim did not immediately report to law enforcement officials. [Doc. 112, pp. 17, 19]  As the Court pointed out above, the strength of the state's case against a defendant is relevant to the prejudice inquiry, because it may be circumstantial evidence of the defendant's state of mind at the time he entered into the plea.  *See Miller, supra*, 262 F.3d at 1074.  However, the ultimate inquiry is whether the defendant would have changed his mind and refused to enter into a plea, had his attorney performed an adequate investigation.  *See id.* at 1075.  As to that issue, the Court must part ways with the report and recommendation.

The first factor to consider is a comparison of the charges Petitioner was facing at the time he entered into his plea, and the benefits he received as a result of that plea.  Petitioner was originally indicted for first-degree kidnaping, second-degree criminal sexual penetration ("CSP"), and aggravated battery against a household member for the incident that occurred on October 8, 2002.  He was subsequently charged, by

---

[4]  Absent a "reasonable explanation," the failure to make any attempt to do any pretrial investigation or interview any potential witnesses is generally regarded as a constitutionally ineffective performance by defense counsel.  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Fisher v. Gibson*, 282 F.3d 1283, 1291 (10th Cir. 2002); *Hale v. Gibson*, 227 F.3d 1298, 1315 (10th Cir. 2000).  The present record contains no "reasonable explanation" of Mr. Ayala's failure to make any investigation of Petitioner's case.

criminal information, with second-degree CSP as a result of an incident that allegedly occurred on September 4, 2002. [Doc. 112, pp. 1-3] Petitioner faced a mandatory sentence of eighteen years on the first-degree kidnaping charge, according to testimony at the hearing held before Magistrate Judge Garza. [Doc. 100, pp. 42, 150] In addition, Petitioner faced a potential habitual-offender enhancement on each offense with which he was charged. [*Id.* at 45, 150] As a result of the plea bargain, the first-degree kidnaping charge was reduced to a second-degree charge, which removed the mandatory nature of the sentence; the State agreed not to pursue the habitual-offender enhancement; and the State agreed not to pursue any other charges, such as aggravated burglary, that might have arisen out of the September 2002 incident. [*Id.* pp. 56-57, 150] Given the elimination of the mandatory sentence as well as the habitual-offender enhancement (which, according to NMSA 1978 § 31-18-17(B), is also mandatory), by entering into the plea Petitioner gained the benefit of potentially reducing the aggregate sentence he would receive even though the plea included the two CSP charges to which he had viable defenses.[5]

Perhaps the most important aspect of this after-the-fact investigation into Petitioner's mind-set is an analysis of the evidence that Mr. Ayala would have uncovered had he performed an adequate investigation.  All of the evidence now emphasized by Petitioner was also known to Petitioner at the time he entered his plea. Petitioner argues that Mr. Ayala should have interviewed Petitioner's daughter, who

---

[5]  Due to Judge Murdoch's actual sentence, this potential may not have come to fruition, but it was still a real possibility at the time Petitioner entered into his plea.

7

could have confirmed that Petitioner called her the night of the October 2002 incident and that he had a key to the victim's house.  He also contends Mr. Ayala should have interviewed a number of different witnesses who could have confirmed that he was involved with the victim in an intimate relationship during the period in question. Finally, he appears to argue that Mr. Ayala should have paid more attention to the fact that the victim delayed reporting the alleged CSP incidents for extended periods of time.  At the time he entered his plea, however, Petitioner already knew he had a key to the house; knew the nature of his relationship with the victim; knew he had telephoned his daughter on the night in question; and knew his ex-wife had not initially reported either instance of alleged CSP. Petitioner also apprised Mr. Ayala of these facts.

This is not a case, then, in which the attorney could have discovered previously-unknown exculpatory evidence that would have influenced the defendant's decision to go to trial.[6]  Instead, in this case Petitioner decided to enter into a plea even though he already knew everything Mr. Ayala could have discovered had he performed a minimum amount of investigation.[7]  Logically, therefore, the lack of investigation by Mr. Ayala was not a determining factor in Petitioner's decision to enter into his plea.

---

[6]  Petitioner's theory also discounts the possibility an investigation would show some or all of these witnesses would not be willing to, or would not, testify as expected.

[7]  There has also been a suggestion that Mr. Ayala should have waited until the results of DNA testing came back before engineering a plea hearing.  However, these results were not favorable to Petitioner, as they showed a "match" between Petitioner's DNA and certain semen stains found in the back seat of the victim's vehicle. [Doc. 100, pp. 15-16, 29, 31] Furthermore, as the report and recommendation noted, where there is an issue as to whether the parties already had an intimate relationship, the presence or absence of DNA is not particularly persuasive one way or the other.

*See, e.g., United States v. Kauffman*, 109 F.3d 186, 191 (3d Cir. 1997) (where ineffectiveness alleged is failure to investigate thoroughly, which caused defendant to plead guilty, defendant must show a likelihood that some evidence would have been discovered that would have caused the attorney to change his recommendation and the defendant to insist on going to trial rather than plead guilty)*; cf. United States v. Herrera*, 138 Fed. App'x. 926 (9th Cir. 2005, unpublished) (where evidence in question was available to defendant prior to entering plea, district court did not abuse its discretion in denying motion to withdraw plea on basis of newly discovered evidence); *United States v. Vasquez*, 97 Fed. App'x 676 (7th Cir. 2004, unpublished) (where defendant knew about evidence at time he pled guilty, prosecutor did not commit violation by failing to disclose evidence to defendant), *rev'd on other grounds*, *Vasquez v. United States*, 543 U.S. 1105 (2005); *United States v. Brutsman*, 2009 WL 960833 (N.D. Iowa) (testimony at hearing did not reveal a defense previously unknown to defendant, so was not basis to allow defendant to withdraw her guilty plea).

The *nolo* plea from Petitioner resulting from Mr. Ayala's failure to investigate, seems especially unlikely where, as here, Petitioner knew he had the ability to fire his defense counsel and had already done so once before; for exactly the same failure to investigate.  Petitioner offers no explanation of the origin of his motivation to plead even though he was aware Mr. Ayala could be fired for the same reason Petitioner had fired his predecessor.

Based on the foregoing, the Court finds that Mr. Ayala's failure to investigate was not a contributing factor to Petitioner's decision to enter into a plea, which means there is not a reasonable probability he would have insisted on going to trial if Mr. Ayala had performed his investigation properly.  For that reason, the Court will deny Petitioner's motion for amendment.

## O R D E R

For the above stated reasons, Carlos Tovar Mendoza's *Motion for Amendment Pursuant to Rules 52 and 59 of the Federal Rules of Civil Procedure* is DENIED.

SO ORDERED this 18th day of May, 2009.

_____
**BRUCE D. BLACK**
**United States District Judge**